COMMONWEALTH vs. KEVIN GOMES.

Bristol. January 9, 1990. - April 9, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal*, Default, Assistance of counsel. *Constitutional Law*, Assistance of counsel, Waiver of constitutional rights. *Waiver.*

A District Court judge improperly assessed costs against a criminal defendant who had defaulted on the payment of $140 in fines for violation of a municipal ordinance, where there was no basis upon which the judge could have determined whether the default was wilful and where the assessment did not reflect any actual expenses resulting directly from the default. [209-210]

A District Court judge erred in summarily committing a criminal defendant for having defaulted on the payment of $140 in fines for violation of a municipal ordinance, where the defendant not only was entitled to a hearing to determine whether the default was wilful but also had a right to be represented by counsel when facing incarceration. [210-212]

A District Court judge erred in incarcerating a criminal defendant who had defaulted on the payment of $140 in fines for violation of a municipal ordinance, where the judge not only failed to make a determination that the defendant was able to pay the fine and had neglected or refused to do so but also failed to find that alternatives to imprisonment would not be adequate punishment. [212-214]

Two mittimuses issued by a District Court improperly directed that a criminal defendant not be permitted to "work off" his fines (in accordance with the provisions of G. L. c. 127, § 144), until he had paid the costs for defaulting on payment of the fines: the defendant was entitled to "work off" the costs as well. [214-215]

COMPLAINT received and sworn to in the New Bedford Division of the District Court Department on May 18, 1988.

Entry of a default was ordered by *John A. Markey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alan Zwirblis*, Committee for Public Counsel Services (*Louis D. Coffin* with him) for the defendant.

*Beth R. Levenson*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Kevin Gomes, appeals from a default and an assessment of costs on the default entered against him in the District Court because he failed to pay a fine in a timely manner. The defendant claims error in (1) the assessment of costs on the default; (2) his summary confinement pursuant to the default without a hearing or representation by counsel; and (3) the Commonwealth's refusal to permit the default costs to be "worked off" pursuant to G. L. c. 127, § 144 (1988 ed.).

The Commonwealth concedes that the defendant was entitled to a hearing at the time of the default and asks that we remand the case to the District Court for such a hearing. We transferred the case to this court on our own motion. We remand the case to the District Court for further proceedings consistent with this opinion.[1]

The undisputed facts are substantially as follows. On May 18, 1988, the defendant pleaded not guilty in the New Bedford Division of the District Court Department on a complaint charging him with violating a New Bedford city ordinance, § 17-10, that makes a crime of possessing an open container of alcoholic beverage. Section 17-10 carries a penalty of not less than five dollars and not more than $300. The ordinance does not provide for any term of incarceration. Later that day, the defendant admitted to sufficient facts before the District Court judge to warrant a finding of guilty. See Mass. R. Crim. P. 12 (a) (3), 378 Mass. 866 (1979). The defendant also signed a form waiving his right to counsel and his right to a first instance jury trial. The judge fined the defendant a total of $140 and continued the case until June 3, 1988, for payment of the fines.

---

[1]Neither the Committee for Public Counsel Services nor the Bristol County Bar Advocates requested any individual relief for their client. They merely request rulings as to the correctness of the judge's actions.

The defendant did not pay the fines by June 3, nor did he appear in court on that date. A default was entered against the defendant, and $50 in costs were assessed against him. The parties agree that there were no "specific expenses" incurred by the court or the Commonwealth in connection with the defendant's default, nor did the Commonwealth request that costs be assessed against the defendant. A default warrant was issued against the defendant.

On June 21, the defendant appeared before the same court for arraignment on an unrelated complaint. Personal recognizance was ordered, and that case was continued until June 29, 1988, for appearance of counsel. Pursuant to the default warrant, however, the defendant was committed to the Bristol County house of correction on two mittimuses that were issued by the District Court. There was no hearing on the reasons for the defendant's default, the propriety of the costs assessed on the default, or the defendant's ability to pay the fines or costs. The defendant was not represented by counsel.

The first mittimus directed as follows: "Defendant Held in Default - To Be Removed and Released on Payment $50 Costs . . . ."[2] This mittimus provided for the defendant to be held until June 29, or until the costs were paid. The second mittimus committed the defendant on the fines. It contained the notation that "[f]ines Are Not To Be Worked Off Until Default Costs Are Paid and Defendant is Removed From Default - See Accompanying Mittimus."

The defendant was confined at the Bristol County house of correction from June 21 until June 28. The defendant was unable to pay the default costs or the fines during this period.[3] On June 28, counsel for the defendant moved to stay the payment of costs pending this appeal. The court allowed the motion and released the defendant.

---

[2]This mittimus also required that the defendant be held for payment of a $15 victim/witness fee. That fee was part of the initial fine and was unrelated to the defendant's default.

[3]The Commonwealth concedes that the defendant was indigent.

1. *Costs.* The defendant argues that the assessment of $50 in costs against him when he failed to appear on June 3 was improper. We agree. Rule 6 (d) (1) of Mass. R. Crim. P., 378 Mass. 852, 854 (1979), provides that "[a] judge may order that expenses incurred as a result of the entry of a default against a defendant are to be assessed as costs against the defendant." The Reporters' Notes to the rule indicate that "[w]hile the assessment is discretionary, it is intended to be exercised only upon the *willful default* of a defendant and as to those costs which *directly result* therefrom" (emphasis added). Reporters' Notes to Mass. R. Crim. P. 6 (d), Mass. Ann. Laws, Rules of Criminal Procedure at 95-96 (1979). Under these standards, the assessment was in error. No hearing was held to determine whether the defendant's default was wilful or "solid." See section 2, *infra.* Thus, the costs were improperly assessed because there was no basis on which the judge could determine whether the defendant's default was wilful.

The assessment also was improper because it does not reflect any actual expenses resulting directly from the defendant's default. "The amount of the costs [is] limited in that [the costs] must be reasonable and they must be expenses incurred as a result of the entry of the default." K.B. Smith, Criminal Practice & Procedure, § 863 (2d ed. 1983). See Mass. R. Crim. P. 6 (d) (1). The Commonwealth agrees, in its endorsement of the jointly submitted "Statement of Agreed Facts," that "there were no witnesses present nor were there any other specific expenses by the court or the Commonwealth attributed to this case."

The Commonwealth suggests, however, that, despite the lack of evidence of any specific expense, the $50 was reasonably assessed against the defendant because it reflects the fair value of the waste of the District Court's time and resources. We reject this argument. Court personnel are not paid on a piecework basis, and defendants may not be

charged as if they were.[4] See *State v. Marino*, 25 Or. App. 817 (1976) (defendant may not be charged costs associated with maintaining necessary government services). See also *State v. Bjornson*, 378 N.W.2d 4, 11 (Minn. Ct. App. 1985) (State's attorney's fees may not be charged to a defendant under cost recovery statute); *State v. Mulvaney*, 61 N.J. 202, 204 (1972) (because costs "were unknown at common law," they may only be charged to criminal defendant where specifically authorized); *Johnson v. State*, 532 P.2d 598, 601 (Wyo. 1975) (jury and bailiff expenses may not be charged to a defendant).

2. *Summary confinement.* a. *Opportunity to be heard.* The Commonwealth concedes that the defendant was entitled to a hearing on the default. We agree. "[E]ven if . . . his absence was voluntary, the judge could not have punished him summarily for failing to appear." *Commonwealth v. Sitko*, 372 Mass. 305, 313 (1977). Accord *Sclamo v. Commonwealth*, 352 Mass. 576, 578 (1967).

At the hearing, there should have been a determination whether the defendant's default was wilful, see Reporters' Notes, Mass. R. Crim. P. 6 (d) (1), or "solid." See *Commonwealth v. Coughlin*, 372 Mass. 818, 821 (1977). Only after such a determination is made can the potentially severe consequences of default be visited on a defendant. *Id.* See *Commonwealth v. Bartlett*, 374 Mass. 744, 748 (1978). See also *Commonwealth v. Francis*, 374 Mass. 750, 754, appeal dismissed, 439 U.S. 805 (1978); *Commonwealth v. O'Clair*, 374 Mass. 759, 764, appeal dismissed sub nom. *Francis v. Massachusetts*, 439 U.S. 805 (1978).

---

[4]We cannot agree with the defendant, however, that these costs were in violation of G. L. c. 280, § 6 (1988 ed.), which provides: "Costs shall not be imposed by the court or justice as a penalty or part penalty for a crime . . . ." These costs were not imposed as part of the sentence for any crime of which the defendant was convicted. They merely were an improper assessment of default costs under Mass. R. Crim. P. 6 (d) (1).

b. *Right to counsel.* The defendant also maintains that he had the right to be represented by counsel at the hearing that should have been held on his default. He is correct. "[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger* v. *Hamlin*, 407 U.S. 25, 37 (1972). "Since the decision to declare a default or to lift a default is, like the decision on sentencing, one 'left to the discretion of the judge,' . . . a defendant is entitled to an informed exercise of that discretion. Therefore, the 'necessity for the aid of counsel in marshaling the facts, introducing evidence of miti- gating circumstances and . . . assisting the defendant to pre- sent his case . . . is apparent.' " (Citations omitted.) *Com- monwealth* v. *Brennick*, 14 Mass. App. Ct. 952, 953 (1982), quoting *Osborne* v. *Commonwealth*, 378 Mass. 104, 114 (1979). Cf. *Williams* v. *Commonwealth*, 350 Mass. 732, 737 (1966).

The defendant signed a form waiving his right to counsel at his initial appearance before the New Bedford District Court. The crime with which he was charged carried no threat of imprisonment, however. Nothing in the record indi- cates that the defendant knew, at the time he initially waived his right to counsel, that he could face incarceration. The Commonwealth argues that, because there was no indication that the defendant's waiver of his right to counsel was not "knowing and intelligent," we should remand the case for a hearing on this issue. We disagree. A waiver made in cir- cumstances in which there is no threat of incarceration does not extend to proceedings that could result in a loss of lib- erty. "[C]ourts indulge every reasonable presumption against waiver . . . ." *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). Accord *Brewer* v. *Williams*, 430 U.S. 387, 404 (1977); *Boyd* v. *Dutton*, 405 U.S. 1, 3 (1972); *Commonwealth* v. *Cava- naugh*, 371 Mass. 46, 53 (1976); *United States* v. *Allen*, 895 F.2d 1577 (10th Cir. 1990); *Sanchez* v. *Mondragon*, 858 F.2d 1462, 1465 (10th Cir. 1988), overruled in part on other

grounds by *Allen, supra.* We conclude that, prior to incarceration on the default, the judge should have informed the defendant that he was entitled to be represented by counsel. *Argersinger* v. *Hamlin, supra.* Cf. *Commonwealth* v. *Higgins,* 23 Mass. App. Ct. 552, 559 (1987) (waiver of right to counsel at default hearing was valid when defendant was offered counsel and refused offer despite judge's admonition that defendant was entitled to representation and offense punishable by incarceration as well as fine).

c. *Incarceration for nonpayment.* The defendant also argues that, even had he been provided with an opportunity to be heard and assistance of counsel, the judge still should not have jailed him for failure to pay fines and costs, because the defendant was indigent and therefore unable to pay them. The Commonwealth contends, on the other hand, that the incarceration of the defendant was justified because of the defendant's default. See G. L. c. 276, § 36.[5] Nothing in G. L. c. 276, § 36, permits a judge to incarcerate a defendant for failure to pay a fine without determining whether the defendant has the ability to pay the fine. Generally, "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." *Tate* v. *Short,* 401 U.S. 395, 398 (1971), quoting *Morris* v. *Schoonfield,* 399 U.S. 508, 509 (1970) (White, J., concurring). "[A] person may not be incarcerated *solely* because of *inability to pay* a fine" (emphasis added). *Santiago* v. *United States,* 889 F.2d 371, 373 (1st

---

[5]That statute provides, in part, that, "[i]f the recognizor does not appear according to his recognizance, the court or justice may issue process to bring him into court for trial. After his failure so to appear, the court or justice may at any time order his default recorded; but it may be removed for good cause at any time to which the case may be continued." The Commonwealth attempts to characterize the judge's actions in incarcerating the defendant as pursuant to c. 276, § 37, which provides for a defendant to be committed to jail if he fails to recognize (i.e., if he fails to make bail). The defendant here did not fail to recognize; he defaulted on his recognizance.

Cir. 1989). Accord *United States ex rel. Meyer* v. *Weil*, 458
F.2d 1068, 1070 (7th Cir.), cert. denied, 409 U.S. 1060
(1972). "[I]t is unconstitutional for [a defendant] to be sent
to prison . . . if he *cannot pay* the fine [under a fine-only
statute] due to indigency." *United States* v. *Grose*, 687 F.2d
1298, 1301 (10th Cir. 1982).[6]

No constitutional difficulty is posed by the incarceration of
a defendant who *refuses* or *neglects* to pay a fine, *Tate* v.
*Short*, *supra* at 400, although a hearing must be held to de-
termine whether a defendant's default was wilful.[7] Indeed,
an indigent defendant may be incarcerated for nonpayment
(as punishment, not coercion), but only after less restrictive
alternatives have failed. Imprisonment may be used as an en-
forcement method "when alternative means are unsuccessful
despite the defendant's reasonable efforts to satisfy the fines
by those means." *Id.* at 400-401. Thus, before incarcerating
a defendant for nonpayment, a judge must inquire into rea-
sonable alternatives to incarceration, such as a long-term
payment schedule or community service.[8] "Only if the . . .
court determines that alternatives to imprisonment are not
adequate in a particular situation to meet the State's interest
in punishment and deterrence may the State imprison a [de-
fendant] who has made sufficient bona fide efforts to pay."

---

[6]Accord *Crutcher* v. *State*, 439 So.2d 725, 726 (Ala. Crim. App. 1983);
*Matter of Collins*, 108 Ariz. 310, 312 (1972) (en banc); *State* v. *Snyder*,
203 N.W.2d 280, 290 (Iowa 1972); *State* v. *Davis*, 544 So.2d 20, 21 (La.
App. 1989); *Smith* v. *State*, 301 Minn. 455, 459-460 (1974); *Cassibry* v.
*State*, 453 So.2d 1298, 1299 (Miss. 1984); *Spencer* v. *Basinger*, 562
S.W.2d 350, 353 (Mo. 1978) (en banc); *State* v. *DeBonis*, 58 N.J. 182,
196 (1971); *People* v. *Baker*, 130 A.D.2d 582, 583 (N.Y. 1987); *Alliance*
v. *Kelly*, 48 Ohio App. 3d 133, 134 (1988); *Commonwealth ex rel. Bene-
dict* v. *Cliff*, 451 Pa. 427, 433-434 (1973); *State* v. *Coleman*, 675 S.W.2d
206 (Tenn. Crim. App. 1984).

[7]Accord *Smith* v. *State*, *supra*; *Spencer* v. *Basinger*, *supra*; *State* v.
*Bosstic*, 16 Ohio App. 3d 438, 438-439 (1984).

[8]Accord *Matter of Collins*, *supra*; *State* v. *Duke*, 10 Kan. App. 2d 392
(1985); *Gilbert* v. *State*, 99 Nev. 702, 708 (1983); *State* v. *DeBonis*,
*supra*; *People* v. *Montero*, 124 Misc.2d 1020, 1022 (N.Y. App. Term
1984); *Commonwealth ex rel. Benedict* v. *Cliff*, *supra*; *State* v. *Coleman*,
*supra*.

*Bearden* v. *Georgia*, 461 U.S. 660, 672 (1983). We reject the Commonwealth's argument that, in this case, the initial sixteen-day continuance to pay the fines was sufficient to meet constitutional requirements.

3. *"Working off" of default costs.* Pursuant to G. L. c. 127, § 144 (1988 ed.), a defendant may "work off" fines by receiving a $30 credit per day against the fines. Section 144 provides in part: "A prisoner confined in a prison or place of confinement for non-payment of a fine or a fine and expenses shall be given a credit of thirty dollars on such fine or fine and expenses for each day during which he shall be so confined, and shall be discharged at such time as the said credits . . . shall equal the amount of the fine or the fine and expenses." The second mittimus that accompanied the defendant to the Bristol County house of correction directed that the fines could not be "worked off" until the default costs had been paid. Thus, the defendant was incarcerated for eight days; if he had been permitted to "work off" the default costs as well as the fines, he would have been released in seven days.

The Commonwealth and the defendant agree that the defendant should have been permitted to "work off" the costs as well as the fines pursuant to c. 127, § 144. We note, however, that an indigent defendant may only be confined for nonpayment of fines or costs in certain limited circumstances. See section 2, *supra*. The statute provides for credits on both fines and expenses, not merely fines. Because default costs consist of the Commonwealth's expenses, see section 1, *supra*, we conclude that they may be worked off pursuant to c. 127, § 144. Any other holding would violate the principle that an indigent defendant may not be incarcerated simply because he is unable to pay costs or fines. See section 2, *supra*. Cf. *Commonwealth* v. *Novak*, 272 Mass. 113, 115-116 (1930) (c. 127, § 144, applies to forfeitures as well as to fines).

We remand this case to the District Court for further proceedings consistent with this opinion.

*So ordered.*