COMMONWEALTH *vs.* BRIAN L. COUGHLIN.

Worcester.    February 7, 1977. — June 22, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Practice, Criminal,* Appeal to Superior Court, Default.

A judge erred in imposing sentences pursuant to G. L. c. 278, § 24, on a defendant who had appeared on several occasions on which his trial was continued, and had been defaulted after appearing late on only a single occasion. [820-822]

---

COMPLAINTS received and sworn to in the Central District Court of Worcester on July 5, 1974.

On appeal to the Superior Court, sentences were imposed by *Garbose, J.,* a District Court judge sitting under statutory authority, following default by the defendant.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas Hoffman* for the defendant.

*Francis R. Fecteau,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. The defendant Brian L. Coughlin was found guilty after trial on September 26, 1974, in the Central District Court of Worcester on two complaints, one charging him with having operated a motor vehicle on Lake Avenue, Worcester, on July 4, 1974, while under the influence of intoxicating liquor (G. L. c. 90, § 24 [1][*a*]), the other with having failed, evidently as part of the same incident, to observe a traffic signal in violation of a city ordinance.[1] The defendant was fined $100 for the former offense (with an assessment of $25) and $10 for the latter. He claimed his appeals to the Superior Court for trial de novo and was ordered to recognize personally in the sums of $100 and $25, without sureties, for his appearance in that court.

On October 24 the defendant appeared as required in the Superior Court and pleaded not guilty. He was then represented by retained counsel who had also represented him in the District Court. The cases having been continued to December 6, the defendant appeared on that date, when the cases were continued to December 18. They were further continued to the January, 1975, list of cases for trial, and were finally set to be heard on February 25.[2]

---

[1] The defendant had pleaded not guilty on July 5, 1974, when the complaints were continued to September 3. On that date the defendant appeared personally, but the complaints were further continued to September 26 when trial occurred.

[2] The record does not indicate the reasons for these continuances.

On the call of the list on February 25 the defendant did not appear, and was defaulted. Later that day, however, he appeared and informed the judge that he could not afford counsel and wanted to avail himself of a "public defender." The probation department promptly completed a financial statement for the defendant and filed it, whereupon the judge designated the Massachusetts Defenders Committee to provide counsel. MDC counsel filed an appearance that afternoon and asked the judge to remove the default. The judge refused and noted counsel's exception. The cases were then "continued for trial" to March 6 at counsel's request.

On March 6 the defendant appeared with counsel "prepared for trial." But the assistant district attorney informed the judge that a Commonwealth witness was unavailable, and requested a continuance to the next day, which was granted. The assistant district attorney told the court on March 7 that that date had proved inconvenient for the defendant, and both sides were requesting a continuance to another date. The cases were "continued for trial" to March 27.

The defendant appeared on March 27. The judge informed him he was still in default. Defense counsel said the defendant was "prepared for trial" and asked the judge to remove the default. The judge refused. He then said that, pursuant to G. L. c. 278, § 24, he was, without trial, imposing the same sentences that had been given in the District Court. Objections were taken to the refusal to lift the default and to the sentences, and exceptions were noted. Upon a substitute bill of exceptions the cases were lodged in the Appeals Court, and they reached this court when we granted the defendant's application for direct appellate review.

General Laws c. 278, § 24, provides: "If the appellant fails to enter and prosecute his appeal [from conviction in the District Court], he shall be defaulted on his recognizance and the superior court may impose sentence upon him for the crime of which he was convicted, as if he had been convicted in said court, and, if he is not then in

custody, may issue process to bring him into court to receive sentence." The statute bears the signs of its age: there was a time when a defendant had to pursue a distinct procedure to "enter" his appeal;[3] today the word is surplusage because an appeal is entered for the defendant when he indicates his intention.[4] The failure to prosecute the appeal has typically consisted of failure to appear in the Superior Court proceedings as required.

Decision to declare a defendant in default on his appeal for trial de novo, or to lift such a default, should normally be left to the discretion of the judge on the scene (see *Commonwealth* v. *Drohan,* 210 Mass. 445, 446 [1912]; *Cableton* v. *State,* 243 Ark. 351, 359 [1967]), and we acknowledge and stress the point that firmness in dealing with failures to attend court on due notice is indispensable if the calendars are not to be reduced to confusion. But casual or capricious defaulting of appellants, with the consequences of § 24, is not in the interests of justice. An examination of the reported cases under that section indicates that sentencing without further trial was undertaken there after solid defaults of appearance. See *Commonwealth* v. *Whitney,* 108 Mass. 5 (1871); *Batchelder* v. *Commonwealth,* 109 Mass. 361 (1872); *Commonwealth* v. *Swain,* 160 Mass. 354 (1894) (see record on appeal); *Commonwealth* v. *Drohan, supra.* Courts have evidently been mindful that the result is drastic with loss of any right to trial by jury available on the trial de novo.[5]

---

[3] Statute 1783, c. 51, § 3, which appears to be the ancestor of the present statute, spoke of the party appellant (from a sentence by a justice of the peace) being held "to produce the copy of the whole process, and of all writings filed before the justice at the court appealed to."

[4] As noted by K.B. Smith, Criminal Practice and Procedure § 749, at 356 (1970). He adds: "As to the prosecution of the appeal, [the appellant] merely waits until he hears from the Clerk or the District Attorney regarding the date of the hearing on the appeal." *Ibid.* See G. L. c. 276, § 65; c. 212, § 22. See also G. L. c. 276, § 82A.

[5] Referring to *Ludwig* v. *Massachusetts,* 427 U.S. 618 (1976), which validated by a five to four decision the "two tier" system as against constitutional challenge, the defendant argues, in effect, that when G. L.

On the record as we have it, the present case appears to be that infrequent one in which the judge went too far. It may be that error would not be found in the refusal to remove the default on February 25, 1975, even though the difficulty about counsel suggests that the defendant's failure to answer the call of the list, which he sought to repair in the afternoon, might have been excusable had it been inquired into. We need not say that an invocation of § 24 on the spot would have been necessarily wrong. But as applications to the court for continuances and decisions on the applications accumulated, the very purpose of § 24 — to clear the dockets and save time and expense[6] — was being frustrated while the defendant and counsel on both sides seem to have been acting on the not unreasonable assumption that the default would be excused and trial would take place. If, by the protraction of the proceedings, there was any design to test whether the defendant really intended to stay with the cases and try them, the judge's ultimate decision to let the default remain and apply § 24 is hard to explain, since the defendant was prepared for trial on two occasions.[7]

In all the circumstances we think the exceptions should be sustained, the default removed, and the cases stand for trial in the Superior Court.

*So ordered.*

---

c. 278, § 24, is applied with as little restraint as was shown here, there is an unconstitutional deprivation of the jury right. We need not rest our decision on a constitutional ground. Cf. *State* v. *Hoar,* 152 Me. 139, 144, 145 (1956) (Tapley, J., concurring).

[6] Cf. *Ogden* v. *Allen,* 208 Kan. 573, 576 (1972).

[7] We cannot read the present record to mean that the cases were being continued only for purposes of sentencing, but in that view there would be no less difficulty in justifying the judge's final action.

As the present decision suggests, it would be advisable for judges in nonroutine cases to state for the record the reason for defaulting a defendant or refusing to remove a default.